**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION**


LUKE E. HARDY,                            )
                                          )
      Plaintiff,                     )
                                          )
    v.                                   )          No. 16-cv-3116
                                          )
COMMISSIONER OF                           )
SOCIAL SECURITY,                          )
                                          )
      Defendant.                     )


## REPORT AND RECOMMENDATION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

Plaintiff Luke E. Hardy appeals from the denial of his application for Social Security Disability Insurance Benefits (Disability Benefits) under Title II of the Social Security Act.  42 U.S.C. §§ 416(i) and 423.  This appeal is brought pursuant to 42 U.S.C. § 405(g).  Hardy filed Plaintiff's Motion for Summary Judgment and Memorandum of Law in Support Thereof (d/e 12) (Hardy Memorandum).  The Defendant Commissioner filed a Motion for Summary Affirmance (d/e 14).  This matter is before this Court for a Report and Recommendation.  For the reasons set forth below, this Court recommends that the Decision of the Commissioner should be affirmed.

<u>STATEMENT OF FACTS</u>

Hardy was born on September 13, 1963.  Hardy graduated from high school and took some college courses.  He formerly worked as a maintenance mechanic.  He suffered from degenerative disc disease of the lumbar spine post two spinal surgeries and obesity.  R. 15, 66, 299.

In May 2005, Hardy injured his back while at work.  June 28, 2005, Hardy underwent an L5-S1 discectomy on the left.  On October 17, 2006, Hardy underwent a discectomy and fusion at the L5-S1 level of his spine. He stopped working in May 2009.  On September 14, 2010, he filed a prior application for Disability Benefits.  R. 93.

On November 18, 2011, Hardy's neurosurgeon Dr. Jerry Bauer, M.D., wrote a letter to Hardy's primary care physician Dr. Virgil Dycoco, M.D. regarding Hardy.  Dr. Bauer said that Hardy came to see him for a follow-up and reevaluation after the 2005 and 2006 surgeries.  Hardy reported persistent pain in his left leg and occasional pain in the right.  Hardy considered a spinal stimulator.  Hardy took Tylenol #3 with codeine for the pain and Valium to help him sleep.  On examination, Dr. Bauer noted markedly reduced left ankle reflex and tenderness along the lower back. Dr. Bauer said that Hardy was otherwise stable.  Dr. Bauer had no

recommendations for Hardy's condition.  Hardy reported that he tried Neurontin and Lyrica for pain, but they were not effective.  R. 275.

On April 25, 2012, an Administrative Law Judge (ALJ) entered a decision denying Hardy's prior application for Disability Benefits.  R. 90-103.  At that time, the ALJ concluded that Hardy had the Residual Functional Capacity (RFC) to engage in a limited range of medium work.  R. 96.

On July 31, 2012, Hardy filed the current application for Disability Benefits now before this Court.  R. 117.

On November 13, 2012, state agency physician Dr. Vittal V. Chapa, M.D., performed a consultative examination on Hardy.  Hardy told Dr. Chapa about the two surgeries.  He reported numbness in his left foot.  Hardy reported that a month earlier, his left leg gave out on him.  Hardy reported that he did not sleep well.  He reported that he could not drive for more than thirty minutes.  He reported leg cramps at night.  He said his low back pain was constant.  He said that he could not stand for long periods.  He put his pain at a 7 on a scale of 1 to 10.  R. 299.

On examination, Hardy was 72 ½" tall and weighed 235 pounds.  Hardy was able to bear weight and ambulate without any ambulatory aids.  Hardy walked with a limp favoring his left leg.  Straight leg raising test was

negative.  The doctor noticed that Hardy had weakness in his left ankle dorsiflexors, rated at 4/5.  His strength in his extremities was otherwise normal.  He had diminished left ankle reflexes.  Hardy had depressed pinprick sensation in his left foot and leg.  Hardy had muscle atrophy in his left calf muscle.  Dr. Chapa observed that Hardy had no joint redness, heat, swelling, or thickening.  Hardy had mild paravertebral muscle spasms.  Hardy's range of motion in his lumbar spine was limited.  He otherwise had full range of motion in all his other joints.  Dr. Chapa assessed chronic lumbosacral pain syndrome.  R. 300-01.

Dr. Chapa ordered an x-ray of Hardy's lumbosacral spine.  The x-ray noted the titanium cages and screws from the surgeries.  The x-ray showed no compression fracture, spondylosis, spondyloarthropay, and nonspecific degenerative change.  R. 305.

On January 11, 2013, state agency physician Dr. Lenore Gonzalez, M.D., prepared a Physical RFC Assessment of Hardy.  R. 113-15.  Dr. Gonzalez opined that Hardy could occasionally lift ten pounds and frequently lift less than ten pounds; stand and/or walk for two hours in an eight-hour workday; sit for six hours in an eight-hour workday; occasionally climb ramps or stairs; never climb ropes, ladders, or scaffolds; and occasionally stoop, kneel, crouch, and crawl.  Dr. Gonzalez further opined

that Hardy was limited in his ability to use his lower left extremity to push and/or pull.  R. 113-14.

On January 14, 2013, Hardy's application for Disability Benefits was denied on its initial determination.  At that time, the examiner determined that Hardy was limited to sedentary work but was not disabled.  R. 116-17, 134.  Hardy sought reconsideration of the determination.

On February 4, 2013, Hardy saw Dr. Dycoco for a follow up on his complaints of back pain.  Dr. Dycoco noted that Hardy was still having intermittent spasms and back pain.  Hardy reported that the pain was persistent and radiated into his left leg.  Hardy reported that he once felt some numbness and weakness.  Dr. Dycoco assessed chronic low back pain with possible disc with intermittent exacerbation with muscle spasm. He renewed the prescriptions for Valium and Tylenol #3 with codeine.  R. 308.

On April 3, 2013, Hardy saw Dr. Bauer for a follow up and reevaluation of his back pain.  Hardy reported that his pain was usually a 6 on a scale of 1 to 10.  Hardy decided against the spinal cord stimulator. Hardy reported that his left leg almost gave out on him recently.  On examination, Hardy was "Negative for back pain, bone/joint symptoms, muscle weakness, myalgia, neck stiffness, numbness in extremities and

rheumatologic manifestations." R. 311. Dr. Bauer noted slightly diminished reflexes in the left ankle, but otherwise normal reflexes. Dr. Bauer observed no atrophy and intact strength. Straight leg testing did not cause pain. Dr. Bauer assessed back and sciatic pain. He ordered an x-ray and MRI of the lumbar spine. R. 310-13.

On April 24, 2013, state agency physician Dr. James Madison, M.D., prepared a Physical RFC Assessment. R. 123-26. Dr. Madison opined Hardy could occasionally lift twenty pounds and frequently lift ten pounds; stand and/or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; occasionally climb stairs and ramps; never climb ropes, ladders, and scaffolds; and occasionally stoop, kneel, crouch, and crawl. Dr. Madison opined that Hardy was unlimited in his ability to push and pull. R. 123-24.

Dr. Madison stated that he differed with the January 11, 2013 opinion of agency physician Dr. Gonzalez, in part, because of Dr. Bauer's April 3, 2013 examination. Dr. Madison noted that Dr. Bauer found that Hardy was negative for back pain, bone/joint symptoms, muscle weakness, myalgia, neck stiffness, numbness in extremities and rheumatologic manifestations; showed intact balance and gait intact with no motor, sensory or reflex deficits; and showed no pain during straight leg raising tests. R. 125.

On April 24, 2013, Hardy's application for Disability Benefits was denied on reconsideration. The examiner on reconsideration determined that Hardy was limited to light work based on the opinions of Dr. Madison. R. 126-27. Hardy asked for a hearing. R. 141-42.

On July 3, 2013, Hardy saw Dr. Bauer for a follow up examination. R. 321-23. Dr. Bauer reviewed the results of the April 2013 x-ray and MRI. The scans showed solid fusion at L5-S1, no degenerative disc disease, disc herniation, or stenosis at any other level, and mild facet arthropathy at L4-5. Hardy reported that he "has episodes where his legs give out and he tends to fall. He is using a cane at all times." R. 321.

On examination, Hardy had no motor weakness, his balance and gait were intact, his coordination was intact, and his reflexes were normal. R. 322. Dr. Bauer discussed a pain management program with Hardy. Dr. Bauer stated:

> Because of Mr. Hardy's continued disability, I believe that he is unable to return to his former employment.
>
> He may, at best, perform sedentary work with a maximum 10 pound lifting restriction and opportunity to change position and avoid prolonged sitting, standing or walking.
>
> Mr. Hardy is in the process of applying for social security disability.
>
> He will return to see me for follow-up on an as-needed basis.

R. 323.  Dr. Bauer issued a Work Status Note for Hardy dated July 3, 2013, which stated the following work restrictions:

> Patient's permitted activity is walking or standing only occasionally, occasional lifting of 10 pounds maximum and/or carrying article like small tools.

R. 318.

On October 28, 2013, Hardy saw Dr. Dycoco complaining of low back pain.  Dr. Dycoco stated that Hardy "otherwise seems to be stable at the present time but needs medication to help him sleep and he was found to have some muscle spasms."  The examination was normal.  Dr. Dycoco gave Hardy Valium and Tylenol #3 with codeine.  R. 319.

On June 9, 2014, Hardy saw Dr. Bauer.  Dr. Bauer stated that Hardy reported continued pain in his back and dysesthesias in his left leg and foot.  Hardy reported that he used a cane to walk to prevent falling.  On examination, Hardy's balance, gait, and coordination were intact, and his reflexes were normal.  Dr. Bauer stated that Hardy was stable.  R. 326-27.  Dr. Bauer stated, "He is unable to work because of his continued pain and he uses a cane."  R. 327.  Dr. Bauer reiterated his July 3, 2013 opinion:

> He is unable to return to his former employment.  At best he is able to perform sedentary work with maximum 10 pounds lifting restriction, an opportunity to change position, and inability to prolonged sitting, standing or walking.

R. 327.

On July 25, 2014, Hardy saw Dr. Dycoco for medication refill.  Dr. Dycoco recited Hardy's history of chronic back pain.  Dr. Dycoco refilled the prescriptions for Valium and Tylenol #3 with codeine.  Dr. Dycoco concluded his notes with the statement, "Patient is unable to work."  R. 333.

## THE ADMINISTRATIVE HEARING

On July 24, 2014, the ALJ conducted an evidentiary hearing on Hardy's application.  R. 57-89.  Hardy appeared in person and with his attorney.  Vocational expert Ronald Malik also appeared.  R. 57, 59.[1]

Hardy testified first.  Hardy said he was six feet two inches tall and weighed 234 pounds.  He was married.  He lived in a two-story house with his wife.  The house did not have a basement.  His bedroom and the laundry were on the ground floor.  Hardy said he drove about eighty miles a week.  He drove himself to the hearing.  He said drove forty miles to get to the hearing.  He said he was in pain as a result.  R. 64-66, 82.  He rated his pain as "pushing eight" on a scale of 1 to 10.  R. 72.

Hardy testified that he had a high school education.  He said he had not worked since April 26, 2012.  He testified that he could not work because "I just, I can't stand very long, and I can't sit very long.  I've been having a lot of –it's like a shock through my legs, and my leg started giving

_____

[1] Hardy notes an unexpected change in the ALJ and the vocational expert involved in this case.  See Hardy Memorandum, at 2, 4.  Hardy asserts no prejudice by these unexpected changes.

out." R. 67. Hardy said he sat forty minutes to drive to the hearing and he was in "a lot of pain." He said he usually got up every ten to fifteen minutes. He opined that he could walk one eighth of a mile. R. 67. Hardy said his doctor put a ten-pound weight restriction on him. R. 68.

Hardy said the doctors did not recommend any more back surgeries for him. The doctor told him his back had "just deteriorated a little since surgery." R. 62. He said his doctors talked about sending him to a pain management clinic, but have not done so. R. 69.

Hardy testified that the Valium and Tylenol #3 with codeine helped him sleep. He said he could sleep three hours with the medication. After three hours of sleep, he took more Tylenol #3 and went back to sleep. R. 69. He took over-the-counter anti-inflammatory drugs during the day. R. 63, 73.

Hardy testified that his doctors told him to start carrying a cane. Hardy did not get physical therapy to teach him how to use the cane. Hardy said he usually used the cane in his left hand, but sometimes in his right. R. 70.

Hardy said he lays down a couple of times a day for fifteen to twenty minutes at a time. He lays on the bed instead of a couch because the bed was higher and easier to get up from. R. 71.

Hardy said that his pain was constant. He said he got shocks down his legs from the pain. He said that the shocks were intermittent and random. R. 73. He said that the pain was worse if he stooped over or bent over repeatedly. R. 74.

Hardy said he had problems concentrating and handling money. He said he forgot things easily. R. 75. He did not use the computer much. He read email and rarely looked at Facebook. R. 77-78.

Hardy testified that he could take care of his personal hygiene and dress himself, although putting on socks was difficult. He did some household chores that did not involve lifting. His son carried the laundry, but he put the clothes in the washer. He ran a push-type carpet sweeper, but did not vacuum. He did some "light cooking." He said that he did not do much cooking any more. He described light cooking as boiling macaroni and adding spaghetti sauce or preparing Hamburger Helper. He said that several months earlier he grilled food on an outdoor grill. R. 78-79, 85.

He said he went grocery shopping. He used the grocery cart to support him. He said he tried to keep the trips short, fifteen to twenty minutes. He said that in about half of his trips to the grocery, he sat on a bench inside the store a few minutes to rest. R. 79-80, 84.

He said he belonged to the Moose and the Eagles lodges.  He did not attend meetings because he would have to sit too long.  He went every week to sign up for drawings.  He did not go to church.  He sometimes went to a movie, but he ended up standing in the back because he could not sit through it.  He did not go out to eat, but he used drive-through service at restaurants.  R. 80.

Hardy said that he played guitar.  He also sometimes played Wii, but he got tired of the Wii.  He said that he did not bowl.  R. 81.

Vocational expert Malik then testified.  Malik rated Hardy's past work as a maintenance mechanic as heavy work.  R. 86.

The ALJ asked Malik the following question:

I'd like you to consider a hypothetical claimant of the same age, education, and having the same past work experience as this claimant; limited to a range of light work; occasional climbing ramps and stairs; no climbing ladders, ropes, or scaffolds; occasional stooping, kneeling, crouching, crawling, and balancing. Is there any past work he could perform?

R. 86.  Malik opined that such a person could not do Hardy's past work. Malik opined that such a person could perform the jobs of wiring assembler, with 2,000 such jobs in Illinois and 22,900 nationally; assembly press operator, with 3,000 such jobs in Illinois and 34,000 nationally; circuit board assembler, with 2,300 such jobs in Illinois and 50,800 nationally; and

finish assembler, with 1,300 such jobs in Illinois and 20,600 nationally.  R. 87.

The ALJ asked Malik whether the person could perform these jobs if he also needed an option to sit or stand every thirty minutes.  Malik opined that such a person could perform the wiring assembler and assembly press operator jobs.  R. 87.  Malik opined that the person could not work if he was off-task fifteen percent above the industry standard or if he had to miss two days a month at work.  R. 88.

## THE DECISION OF THE ALJ

On October 27, 2014, the ALJ issued her revised decision.  R. 13-20. The revised decision supplanted the ALJ initial decision dated August 29, 2014.  The initial decision erroneously included work history from another individual who worked in 2013.  The individual used Hardy's Social Security Number, but used a different name, and worked in a different location.  See R. 28-29; Supplemental Certified Transcript of Proceedings before the Social Security Administration (d/e 8), at 337-44.

The ALJ's revised decision followed the five-step analysis set forth in Social Security Administration Regulations (Analysis).  20 C.F.R. §§ 404.1520, 416.920.  Step 1 requires that the claimant not be currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b),

416.920(b). If true, Step 2 requires the claimant to have a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c). If true, Step 3 requires a determination of whether the claimant is so severely impaired that he is disabled regardless of his age, education and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). To meet this requirement at Step 3, the claimant's condition must meet or be equal to the criteria of one of the impairments specified in 20 C.F.R. Part 404 Subpart P, Appendix 1 (Listing). 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant is not so severely impaired, the ALJ proceeds to Step 4 of the Analysis.

Step 4 requires the claimant not to be able to return to his prior work considering his age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(e) and (f), 416.920(e) and (f). If the claimant cannot return to his prior work, then Step 5 requires a determination of whether the claimant is disabled considering his RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c). The claimant has the burden of presenting evidence and proving the issues on the first four steps. The Commissioner has the burden on the last step; the Commissioner must show that, considering the listed factors, the claimant can perform some type of gainful employment that exists in the national economy. 20 C.F.R. §§ 404.1512, 404.1560(c); Weatherbee v. Astrue, 649

F.3d 565, 569 (7th Cir. 2011); <u>Briscoe ex rel. Taylor v. Barnhart</u>, 425 F.3d 345, 352 (7th Cir. 2005).

The ALJ determined that Hardy met his burden at Steps 1 and 2.  He had not engaged in substantial gainful activity since April 26, 2012, the day after the decision in his prior application, and he had severe impairments from degenerative disc disease of the lumbar spine post surgeries and obesity.  At Step 3, the ALJ determined that Hardy's impairments or combination of impairments did not meet or equal a Listing.  R. 15-16.  In making the decision at Step 3, the ALJ noted Dr. Bauer's April 3, 2013, July 3, 2013, and June 9, 2014, findings in which Dr. Bauer reported that Hardy's balance, gait, and coordination were intact, Hardy had no motor weakness, and his reflexes were normal.  The ALJ also noted Dr. Chapa's examination and the results of the x-ray ordered by Dr. Chapa and the April 2013 MRI that showed a solid fusion at L5-6.  R. 16.

At Step 4, the ALJ found that Hardy had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: he cannot climb ladders, ropes, or scaffolds; he can occasionally climb ramps/stairs; and he can occasionally balance, stoop, kneel, crouch, and crawl.

R. 16.  The ALJ relied on Dr. Chapa's finding that he could ambulate; the x-rays and MRI that showed a successful surgery and very little additional

deterioration; Dr. Bauer's findings of normal balance, gait, strength, and reflexes; and Hardy's daily activities.  R. 16, 18.

In reaching this decision, the ALJ gave very little weight to Dr. Bauer's opinion that Hardy was limited to sedentary work with an option to change positions every thirty minutes.  The ALJ stated, "This opinion is inconsistent with the doctor's own treatment notes, which reflect essentially normal physical exams 2013."  R. 18.  The ALJ also rejected the July 25, 2014 statement by Dr. Dycoco that Hardy was unable to work because Dr. Dycoco's treatment notes did not include objective findings to support the statement.  R. 18.

The ALJ determined at Step 4 that Hardy could not work at his prior job as a maintenance mechanic.  R. 19.

At Step 5, the ALJ determined that Hardy could perform a significant number of jobs in the national economy.  The ALJ relied on the Medical-Vocational Guidelines, 20 C.F.R. Part 404 Subpart P Appendix 2, and the opinions of vocational expert Malik that a person with Hardy's age, education, work experience, and RFC could perform the jobs of wire assembler, assembly press operator, circuit board screener, and finish assembler.  R. 19-20.  The ALJ concluded that Hardy was not disabled.

Hardy appealed the decision of the ALJ. On February 26, 2016, the Appeals Council denied Hardy's request for review. The decision of the ALJ then became the final decision of the Defendant Commissioner. R. 1. Hardy then brought this action for judicial review.

## ANALYSIS

This Court reviews the Decision of the Commissioner to determine whether it was supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate" to support the decision. Richardson v. Perales, 402 U.S. 389, 401 (1971). This Court must accept the findings if they are supported by substantial evidence, and may not substitute its judgment or reweigh the evidence. Jens v. Barnhart, 347 F.3d 209, 212 (7th Cir. 2003); Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). This Court will not review the ALJ's evaluation of statements regarding the intensity, persistence, and limiting effect of symptoms unless the evaluation is patently wrong and lacks any explanation or support in the record. See Pepper v. Colvin, 712 F.3d 351, 367 (7th Cir. 2014); Elder v. Astrue, 529 F.3d 408, 413-14 (7th Cir. 2008); SSR 16-3p, 2016 WL 1119029, at *1 (2016) (The Social Security Administration no longer uses the term credibility in the evaluation of statements regarding symptoms). The ALJ must articulate at least

minimally her analysis of all relevant evidence.  <u>Herron v. Shalala</u>, 19 F.3d 329, 333 (7th Cir. 1994).  The ALJ must "build an accurate and logical bridge from the evidence to his conclusion."  <u>Clifford v. Apfel</u>, 227 F.3d 863, 872 (7th Cir. 2000).

The decision was supported by substantial evidence.  The x-rays and MRI showed successful surgeries and no additional significant degenerative changes in Hardy's spine.  Dr. Chapa found that Hardy could ambulate without assistive devices.  Dr. Bauer consistently found that Hardy's balance, gait, and coordination were intact, and his reflexes were normal.  Straight leg raising tests by Drs. Chapa and Bauer were negative.  This evidence constitutes substantial evidence to support the ALJ's conclusion that Hardy could perform a limited range of light work.  Vocational expert Malik's testimony supported the conclusion that a person with Hardy's age, education, work experience, and RFC would perform a significant number of jobs in the national economy.  The decision at Step 5 that Hardy was disabled is supported by substantial evidence.

Hardy raises one issue on appeal.  Hardy argues that the ALJ erred by not giving sufficient weight to Dr. Bauer's opinion that Hardy was limited to sedentary work.   The ALJ must give the opinions of a treating physician controlling weight if the opinions are supported by objective evidence and

are not inconsistent with other evidence in the record. 20 C.F.R. §

404.1527(d)(2); <u>Bauer v. Astrue</u>, 532 F.3d 606, 608 (7th Cir. 2008).[2]  In this

case, the ALJ found that Dr. Bauer's opinions were given little weight

because they were inconsistent with his treatment notes from 2013.  Dr.

Bauer consistently found that Hardy's balance, gait, and coordination were

intact, and his reflexes were normal.  Dr. Bauer also found straight leg

raising tests were negative.  These inconsistencies constitute substantial

evidence to give the opinions little weight rather than controlling authority.

Hardy argues that even if Dr. Bauer's opinions were not entitled to

controlling weight, the ALJ erred because he did not weigh Dr. Bauer's

opinions in light of the relevant factors for assessing opinions of all medical

sources.  <u>See</u> SSR 96-2. The court disagrees.  The ALJ weighed Dr.

Bauer's opinions and gave them little weight because of the inconsistencies

with his own treatment records from 2013.  R. 18. The ALJ discussed these

notes in detail two pages earlier in her decision.  R. 16.  The ALJ

adequately explained the basis for her decision.

Hardy argues that the ALJ should have either re-contacted Dr. Bauer

to get additional information or consult a medical expert.  The Court again

---

[2] The Commissioner recently changed the regulations regarding the interpretations of medical evidence. The amendments, however, apply prospectively to claims filed on or after the amendment's effective date of March 27, 2017. <u>Revisions to Rule Regarding the Evaluation of Medical Evidence</u>, 82 Fed. Reg. 5844-01, at 5844-45 (January 18, 2017).  As such, the amendments do not apply here.

disagrees.  An ALJ is not required to re-contact a treating physician or secure additional medical evidence if the evidence in the record is adequate to determine whether the claimant was disabled.  Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004).  The evidence was adequate in this case.

Hardy implies that the ALJ chose light work instead of sedentary work because Hardy would have been disabled under the Medical-Vocational Guidelines when he became 50 years old on September 13, 2013.  Hardy Memorandum, at 9-10.  Hardy cites as support for this discussion the fact that the initial disability determination limited Hardy to sedentary work, but the determination on reconsideration changed the limitation to light work. Id. at 10.

The change in limitation from sedentary to light work was based on the differences between Dr. Gonzalez's initial RFC Assessment and Dr. Madison's RFC Assessment on reconsideration.  In the interim between these two assessments, Dr. Bauer saw Hardy on April 3, 2013.  Dr. Bauer found that Hardy was negative for back pain, bone/joint symptoms, muscle weakness, myalgia, neck stiffness, numbness in extremities and rheumatologic manifestations; showed intact balance and gait intact with no motor, sensory or reflex deficits; and showed no pain during straight leg

raising tests.  R 311.  Dr. Madison relied on Dr. Bauer's examination to change the limitation from sedentary to light.  R. 125.  Dr. Gonzalez did not have the benefit of that examination when she made her assessment.  The evidence does not show that Dr. Madison or the examiner on reconsideration considered that Hardy would become 50 years old in August 2013.

Lastly, Hardy argues the ALJ erred by falsely stating that Hardy's primary care physician said that Hardy could not work.  <u>Hardy Memorandum</u>, at 7, 10.  Hardy is mistaken. On July 25, 2014, Hardy saw his physician for a medication refill.  The physician concluded the last line of his treatment notes with the statement, "Patient is unable to work."  R. 333.  The ALJ correctly characterized the treatment note.

THEREFORE, THIS COURT RECOMMENDS that the Defendant Commissioner's Motion for Summary Affirmance (d/e 14) be ALLOWED, Plaintiff Luke Hardy's Motion for Summary Judgment and Memorandum of Law in Support Thereof (d/e 12) be DENIED, and the decision of the Commissioner be AFFIRMED.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of a copy of this Report and Recommendation.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file a timely

objection will constitute a waiver of objections on appeal.  See Video

Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986).  See Local

Rule 72.2.

ENTER:  August 21, 2017


_s/ Tom Schanzle-Haskins_
UNITED STATES MAGISTRATE JUDGE